Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PERKUMPULAN INVESTOR CRISIS
CENTER DRESSEL – WBG,

      Plaintiff,

      v.

DANNY M.K. WONG, DAVID THACKER,
KELLY THACKER, REGAL FINANCIAL
BANCORP, INC., *et al.*,

      Defendants.

C09-1786-JCC

**ORDER**

      This matter comes before the Court on the motion to dismiss of Defendant Regal Financial Bancorp. (Dkt. No. 50). Other defendants also join in the motion. (Dkt. Nos. 55–56, 63–65). In addition to the motion itself, the Court has considered Plaintiff's response (Dkt. No. 66), the reply of Defendant Regal Financial Bancorp (Dkt. No. 70), and the remaining parts of the relevant record, including Plaintiff's complaint and accompanying exhibits. (Dkt. No. 1). Having determined that oral argument is unnecessary, the Court hereby DENIES the motion for the reasons explained below.

ORDER, C09-1786-JCC
Page 1

## I.   BACKGROUND

Plaintiff Perkumpulan Investor Crisis Center alleges that Defendants defrauded thousands of Indonesian investors of more than one-hundred million dollars.[1] (Compl. 2–3 (Dkt. No. 1)). From 2001 to 2007, Defendants raised approximately six-hundred million dollars from more than ten thousand Indonesian investors. (*Id.* 23). They did so by describing themselves to prospective Indonesian clients as investment professionals, promising a twenty-four-percent return on all investments of more than five thousand dollars and a twenty-eight-percent return on all investments of more than ten thousand dollars. (*Id.* 21). Defendants told investors that their funds would be invested in a "diversified selection of securities, bonds, mutual funds and derivative products, such as financial futures, foreign exchange, and bullion." (*Id.* 33).

In fact, Plaintiff alleges, Defendants were running a classic Ponzi scheme, using most of the funds of new investors to pay distributions to older investors. They also used some funds for personal purchases, or to finance their own business operations. (*Id.* 23–24). In late 2006, the operation began to fall apart, and by early 2007, it had collapsed completely. (*Id.* 49–54). As stated above, Indonesian investors lost millions of dollars. (*Id.* 2–3).

Plaintiff was not an investor. Plaintiff is an Indonesian corporation formed by defrauded investors in April 2007 "to resolve the investment problems of its members." (*Id.* 4). More than three thousand investors have assigned their claims to Plaintiff by signing a document titled *Assignment of Claim*. The document states that each signatory "does hereby irrevocably grant, assign, transfer and set over" to Plaintiff the assignee's "right, title and interest . . . to any claim, demand or cause of action" that the assignee has against Defendants. (Assignment 3 (Dkt. No. 1-2)). Signatories also promise that they have "not previously assigned or pledged this claim to any third party[,]" and that they have "not

---

[1] Because this matter comes before the Court on a motion to dismiss for lack of subject-matter jurisdiction, all allegations stated in the complaint are taken as true and construed in the light most favorable to Plaintiff. *See United States v. One 1997 Mercedes E420*, 175 F.3d 1129, 1131 n.1 (9th Cir. 1999).

ORDER, C09-1786-JCC
Page 2

filed any suit with respect to this claim." (*Id.*). Finally, the document also binds Plaintiff "to remit all recovery from the claim to the several and various assignors in a neutral manner that is fair to all, based upon criteria established by [Plaintiff]." (*Id.*).

**A.   Previous Litigation**

This matter has come before the Court before. In October 2009, the Court dismissed Plaintiff's complaint without prejudice. The Court concluded that Plaintiff lacked constitutional standing. (Order, Cause No. C09-0526-JCC (Dkt. No. 113)). The Court rejected Plaintiff's argument that it enjoyed assignee standing for two reasons: "First, Plaintiff has failed to secure assignments from all the investors it claims to represent. . . . [M]ore than fifteen hundred of the forty-two hundred investors whom [Plaintiff] claims to represent have never assigned their claims." (*Id.* 13). The Court continued: "Second, Plaintiff began the process of securing assignments only after filing the complaint. . . . Untimely actions cannot save Plaintiff's complaint from dismissal for lack of subject-matter jurisdiction." (*Id.*).

Plaintiff filed the lawsuit now before the Court in December 2009, having secured assignments from 3481 individual investors. Defendants argue that Plaintiff still lacks standing, and that this Court should dismiss for lack of subject-matter jurisdiction once again. In the alternative, Defendants move to dismiss for failure to join an indispensable party.

**II.   LEGAL STANDARD**

A motion to dismiss for lack of subject-matter jurisdiction arises under Rule 12(b)(1) of the Federal Rules of Civil Procedure. When evaluating such a motion, this Court "must accept all uncontroverted factual allegations regarding jurisdiction as true." *McGraw v. United States*, 281 F.3d 997, 1001 (9th Cir. 2002) (*rev'd on other grounds*). For the purposes of the motion to dismiss, all facts in the complaint are construed in favor of Plaintiff. *Id.*; *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) ("[T]he moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.").

### III.   CONSTITUTIONAL STANDING

Federal courts are courts of limited jurisdiction, limited by Article III § 2 of the U.S. Constitution to the resolution of "Cases" and "Controversies." The Supreme Court has interpreted Article III to require that a plaintiff in federal court have constitutional standing. *See, e.g., Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332 (2006). The "irreducible constitutional minimum" of Article III standing contains three elements.

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal citations and markings omitted). The party asserting federal jurisdiction has the burden of establishing standing. *Cuno*, 547 U.S. at 342 n.3 ("We presume that federal courts lack jurisdiction unless the contrary appears in the record.").

The Supreme Court applied these principles to claims by assignees in *Sprint Communications Company v. APCC Services*, – U.S. –, 128 S.Ct. 2531 (2008). The underlying controversy arose from a federal law requiring long-distance carriers like Sprint to compensate the owners of payphones for calls that customers of the long-distance carriers make using prepaid long-distance cards or 1-800 numbers. Federal law requires that the payphone owners be paid approximately fifty cents for each such "dial-around" call. *See id.* at 2534 (citing 47 C.F.R. § 64.1300). If a long-distance carrier fails to pay the fifty-cent fee, a payphone operator has the right to sue. Because a fifty-cent claim does not make a dime's worth of difference to payphone owners, they generally assign their claims to third-party agents. The Court described the common arrangement:

//

//

ORDER, C09-1786-JCC
Page 4

> Because litigation is expensive, because the evidentiary demands of a single suit are often great, and because the resulting monetary recovery is often small, many payphone operators assign their dial-around claims to billing and collection firms called "aggregators" so that, in effect, these aggregators can bring suit on their behalf. Typically, an individual aggregator collects claims from different payphone operators; the aggregator promises to remit to the relevant payphone operator (*i.e.*, the assignor of the claim) any dial-around compensation that is recovered; the aggregator then pursues the claims in court or through settlement negotiations; and the aggregator is paid a fee for this service.

*Sprint*, 128 S.Ct. at 2534 (internal citation omitted).

The Court was faced with the same question that this case presents: "whether an assignee of a legal claim [can] sue when that assignee ha[s] promised to give all litigation proceeds back to the assignor." *Id.* at 2538. The Court stated that "history and precedent . . . make clear that courts have long found ways to allow assignees to bring suit; that where assignment is at issue, courts . . . have always permitted the party with legal title alone to bring suit; and that there is strong tradition specifically of suits by assignees for collection." *Id.* at 2541. In short, the Court held that assignees of legal claims enjoy constitutional standing in federal courts. *Id.*

**A.    Discussion**

Plaintiff has met the requirements for assignee standing. In its complaint, Plaintiff alleges that 3481 investors assigned it their claims. (Compl. 4 (Dkt. No. 1)). In an exhibit attached to the complaint, Plaintiff provides the Court with a copy of the assignment that each assignee signed. (Assignment (Dkt. No. 1-2)). In another exhibit, Plaintiff provides the name and claimed losses of each investor who has assigned his or her claim. (Investor Identities (Dkt. No. 1-3)). Plaintiff has therefore alleged that 3481 investors signed a document irrevocably conveying to Plaintiff "any claim, demand or cause of action" that they have against Defendants. Plaintiff has also alleged that the same document obligates it "to remit all recovery from the claim to the several and various assignors in a neutral manner that is fair to all[.]" (Assignment 3 (Dkt. No. 1-2)). Because the investors assigned their claims to Plaintiff "lock, stock and barrel," *Sprint*, 128 S.Ct. at 2542, and because Plaintiff "has a contractual obligation to litigate

ORDER, C09-1786-JCC
Page 5

in the [investors'] interest," *id.* at 2543 (internal markings omitted), this case is on all fours with *Sprint.* Plaintiff therefore enjoys assignee standing.

Defendant argues that *Sprint* is not controlling because "[t]he purported assignment does not convey full title lock, stock and barrel." (Mot. 8 (Dkt. No. 50)). According to Defendant, the assignment is merely a ratification of a pre-existing power-of-attorney, and "certainly does not convey *ownership of the claim itself.*" (*Id.* 10) (emphasis in original). To support this conclusion, Defendant points to a clause in the assignment which gives Plaintiff the authority "to take whatever legal action may be necessary to enforce the claim in any jurisdiction anywhere in the world." (*Id.* 9–10).

Defendant's argument fails, as it fails to take account of the facts the Supreme Court confronted in *Sprint*. The payphone operators in *Sprint* also signed a single document containing both an assignment and power-of-attorney agreement. *Sprint*, 128 S.Ct. at 2534. In fact, the same agreement "assigned, transferred, and set over . . . all rights, title and interest . . . in the payphone operators' claims, demands or causes of action," *and* "appointed the aggregator as the payphone operators' true and lawful attorney-in-fact." *Id.* (internal markings omitted). The assignment at issue in this case does the same, and is therefore indistinguishable from the assignment at issue in *Sprint*.[2]

Because Plaintiff has alleged facts falling squarely under *Sprint*, the Court denies Defendant's motion to dismiss for lack of subject-matter jurisdiction.

## IV.    INDISPENSABLE PARTIES

Rule 19 of the Federal Rules of Civil Procedure "is designed to protect the interest of absent persons as well as those already before the court from multiple litigation or inconsistent judicial

---

[2]Defendant also argues that the assignment is an unconscionable contract of adhesion, which renders it voidable under the law of Washington State. (Mot. 13–17). This argument is unpersuasive in the extreme. The Court need not discuss it in any depth; it is enough to say that the individual Indonesian investors, and not Defendant, would be the proper party to assert unconscionability. *See Bastaich v. Kenworth Northwest, Inc.*, 85 Wash.App. 1084 (1997) (describing unconscionable contracts as "voidable," which Black's Law Dictionary defines to mean "capable of being affirmed or rejected *at the option of one of the parties.*" (emphasis added)) Because no party to the contract seeks to annul or otherwise challenges the assignment, the Court will not entertain an argument that it is unconscionable.

ORDER, C09-1786-JCC
Page 6

determinations." WRIGHT & MILLER, 7 FEDERAL PRACTICE & PROCEDURE § 1602 (3d 2001). In relevant part, Rule 19 reads:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
> (A) in that person's absence, the court cannot afford complete relief among existing parties; or
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>     (i) as a practical matter impair or impede the person's ability to protect the interest; or
>     (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

If an absent party meets one of those requirements, it is "a necessary party" under Rule 19, which means nothing more than that it "should be joined if feasible." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 867 n.5 (2004) (explaining that "necessary" a term of art in Rule 19).

Defendant argues that several hundred Indonesian investors who have not assigned their claims are necessary parties. According to Defendant, "[a]llowing this claim to proceed in its current form would impinge upon the rights of [Defendants] to avoid multiple and inconsistent obligations." (Mot. 22 (Dkt. No. 50)).

## A.    Discussion

Other potential victims are not necessary parties for the purpose of Rule 19. Plaintiff sues in its own name, seeking to vindicate the 3481 claims which it has been assigned. At the end of this litigation, those claims will have been fully adjudicated and the 3481 investors will be subject to the force of *res judicata.* Other investors might or might not bring their own claims against Defendants. They might or might not recover. They will necessarily litigate only their own claims, however, and not claims that have been assigned to Plaintiff. Defendant therefore fails to establish that it is at "substantial risk of incurring double, multiple, or otherwise inconsistent obligations[.]" FED. R. CIV. P. 19(a)(1)(B)(ii).

//

ORDER, C09-1786-JCC
Page 7

## V.      CONCLUSION

For the reasons explained above, the Court hereby DENIES Defendant's motion to dismiss. (Dkt. No. 50).

Consistent with the terms of the Court's previous scheduling order in this matter (Dkt. No. 31), Defendants have thirty days to file any motion to dismiss for failure to state a claim upon which relief can be granted.

SO ORDERED this 25th day of May, 2010.

_____
JOHN C. COUGHENOUR
United States District Judge

ORDER, C09-1786-JCC
Page 8