THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PERKUMPULAN INVESTOR CRISIS
CENTER DRESSEL – WBG,

                    Plaintiff,

        v.

DANNY MK WONG, *et al.*,

                    Defendants.

CASE NO. C09–1786–JCC

ORDER

This matter comes before the Court on Plaintiff's motion for default judgment (Dkt. No. 312) and motion for leave to file an amended complaint (Dkt No. 350). Having thoroughly considered the parties' briefing and the relevant record, and finding oral argument unnecessary, the Court hereby DENIES the motion for default judgment and GRANTS the motion to amend.

I.      **BACKGROUND**

        On December 16, 2009, Plaintiff Perkumpulan Investor Crisis Center Dressel – WBG ("Perkumpulan") filed a complaint alleging that numerous defendants defrauded thousands of Indonesian investors of more than one–hundred million dollars. (Dkt. No. 1 at 2–3.) Specifically, Plaintiff's complaint alleged: (1) a Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, claim against the "Ponzi Scheme Defendants"; (2) a RICO claim against the "Regal Financial Bank Defendants"; (3–4) state–law fraud claims against the Ponzi Scheme and Regal Financial Bank Defendants; (5–6) state–law breach of fiduciary duty claims

1   against the Ponzi Scheme and Regal Financial Bank Defendants; (7) a common law conspiracy

2   claim against all Defendants; (8–9) negligence and gross negligence claims against the Regal

3   Financial Bank Defendants; (10) an unjust enrichment claim against the Ponzi Scheme

4   Defendants; and (11–12) negligence and negligent misrepresentation claims against Tanner LC.

5   (Dkt. No. 1, ¶¶ 6.1–17.8.)

6          Plaintiff's complaint divides the defendants into groups. The "Ponzi Scheme Defendants"

7   included those individuals who allegedly operated the scheme to defraud the Indonesian

8   investors. Those individuals included: Danny Wong, Frank Ho, Joseph Yau, Dwight Williams,

9   Luis Garza, Kenneth McCabe, Donald Sherer, Michelle Lawrence Sherer, Kelly Thacker, and

10  David Thacker. (Dkt. No. 1, ¶ 4.2.) The "Regal Financial Bank Defendants" included Regal

11  Financial Bancorp, Regal Financial Bank, and Jesse Tam, Regal Bank's founder and chief

12  executive officer. (Dkt. No. 1, ¶ 5.1.) Plaintiff also named several directors of Regal Financial

13  Bank. (Dkt. No. 1, ¶¶ 3.17 – 3.26.) Finally, Plaintiff asserted claims against Tanner LC, which

14  allegedly served as the accounting firm to the fraudulently operated Dressel BVI. (Dkt. No. 1,

15  ¶ 3.27.)

16         This case has now been pending for more than three years. In the course of the lawsuit,

17  the Court dismissed with prejudice all claims against the "Regal Financial Bank Defendants" and

18  the Regal Director defendants pursuant to the parties' private settlement agreement after Plaintiff

19  sought to amend the complaint (Dkt. No. 215); and Defendant Frank Ho was dismissed from the

20  lawsuit for lack of personal jurisdiction. (Dkt. No. 273.) The remaining defendants thus include

21  most of the Ponzi Scheme Defendants—Danny Wong, Joseph Yau, Dwight Williams, Kelly and

22  David Thacker, Donald and Michelle Sherer, Kenneth McCabe, and Luis Garza—and Tanner

23  LC. Of those remaining defendants, all except for Danny Wong, Joseph Yau, and Luiz Garza

24  have filed notices of appearance and are defending the matter. Mssrs. Wong, Yau, and Garza,

25  however, have had Orders of Default entered against them. (Dkt. Nos. 212, 213, 252.)

26  //

ORDER
PAGE - 2

1    The Court now has before it Plaintiff's motion for default judgment against Danny Wong,

2    Joseph Yau, and Luis Garza. (Dkt. No. 312.) No opposition or response to this motion was

3    received from any defendant. In this motion, Plaintiff requests that the Court enter default

4    judgment on Plaintiff's RICO claim against these three individuals in the amount of "at least

5    $245.98 million." (Dkt. No. 312 at 10.)

6        The Court also has before it Plaintiff's motion for leave to amend its complaint. (Dkt. No.

7    350.)  By that motion, Plaintiff proposes not to supplement its complaint in order to resurrect

8    claims against previously dismissed defendants, but to amend the complaint in two respects due

9    to information found in the course of discovery. The first proposed amendment supplements

10   Plaintiff's allegations regarding the scheme's use of Tanner LC's accounting services, and adds

11   Randy Sellers—a Tanner LC accountant who worked on the Dressel account—and Professional

12   Business Advisors, LLC, the accounting firm Mr. Sellers used to allegedly provide services to

13   Dressel after he left Tanner LC, as defendants to the matter. (Dkt. No. 350, at 2–3.)

14       Plaintiff's second proposed amendment names as defendants individuals who currently

15   hold title to certain assets in Alaska, which, according to Plaintiff, constitute assets obtained with

16   proceeds of the fraudulent scheme. (Dkt. No. 350 at 3.) Those individuals are Jared Sherer,

17   Robert Jinks, the Asset Recovery Trust, Zarahemla Trusts One and Two, Intrepid Trust, Elite

18   Portfolio, LLC, PADRM Gold Mine LLC, Rafael Benita Garza, and Global Consulting Services,

19   S.A. de C.V. (Dkt. No. 350–2 at 106.) According to Plaintiff, the "purpose of this amendment is

20   for the defrauded investors to be able to seize whatever remains of their funds invested in

21   Dressel" if they succeed on their other claims. (*Id.*) No Defendant opposes Plaintiff's motion for

22   leave to amend, but non–party and proposed–defendant Jared Sherer filed an unsolicited

23   response, in which he raises a host of arguments disputing the merits of Plaintiff's claims. (Dkt.

24   No. 353.)

25   //

26   //

1    II.    **DISCUSSION**

2        A.    **Plaintiff's Motion for Default Judgment**

3        The decision to grant or deny a request for default judgment is left to the sound discretion

4    of a district court, *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980), and a defendant's

5    default does not automatically entitle a plaintiff to a court ordered judgment. *Id.* On the contrary,

6    default judgments are generally disfavored and cases should be decided upon their merits

7    whenever possible. *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). In

8    exercising its discretion to award a default judgment, the Court is bound by Federal Rules of

9    Civil Procedure 54 and 55, which govern the entry of final judgments and default judgments,

10   respectively, as well as the multi–factor framework established in *Eitel v. McCool*, 782 F.2d

11   1470, 1471–72 (9th Cir. 1986).[1]

12       Particularly applicable here is Federal Rule of Civil Procedure 54, which governs the

13   entry of all final judgments, including default judgments. FED. R. CIV. P. 54(b). In relevant part,

14   Rule 54(b) states that:

15       When an action presents more than one claim for relief . . . or when multiple
16       parties are involved, the court may direct entry of a final judgment as to one or
         more, but fewer than all, claims or parties **only if** the court expressly determines
17       that there is no just reason for delay. Otherwise, any order or other decision,
         however designated, that adjudicates fewer than all the claims or the rights and
18       liabilities of fewer than all the parties does not end the action as to any of the
         claims or parties and may be revised at any time before the entry of a judgment
19       adjudicating all the claims and all the parties' rights and liabilities.

20   FED. R. CIV. P. 54(b) (emphasis added).

21       In addition to Rule 54(b), courts have long recognized that "where a complaint alleges

22   that defendants are jointly liable and one of them defaults, judgment should not be entered

23

24       ───────────────────────

25   [1] The seven *Eitel* factors include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's
     substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility
     of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong
26   policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. 782 F.2d at 1471-72.

ORDER
PAGE - 4

1   against the defaulting defendant until the matter has been adjudicated with regard to all

2   defendants." *Nielson v. Chang*, 253 F.3d 520, 531–32 (9th Cir. 2001) (summarizing holding of

3   *Frow v. De La Vega*, 82 U.S. 552, 554 (1872)). Indeed, the Supreme Court in *Frow v. De La*

4   *Vega*, which the Ninth Circuit has described as "[t]he leading case on the subject of default

5   judgments in actions involving multiple defendants," warned that "absurdity might follow" in

6   instances where a court "can lawfully make a final decree against one defendant . . . while the

7   cause was proceeding undetermined against the others." *Frow*, 82 U.S. at 554; *Nielson*, 253 F.3d

8   at 531–32. "It follows that if an action against the answering defendants is decided in their favor,

9   then the action should be dismissed against both answering and defaulting defendants." *Nielson*,

10  253 F.3d at 532. The purpose of this well–established rule is, of course, to avoid inconsistent

11  judgments against defaulting and answering defendants on the same claims.

12      The Ninth Circuit has repeatedly reaffirmed *Frow*'s continuing validity and even

13  extended the rule beyond the traditional "joint liability" scenario. *Garamendi v. Henin*, 683 F.3d

14  1069, 1082–83 (9th Cir. 2012) (recognizing *Frow* rule and its subsequent extension to "similarly

15  situated" defendants); *see Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir.

16  2009) ("[W]here there are several defendants, the transgressions of one defaulting party should

17  not ordinarily lead to the entry of a final judgment[.]). Other courts of appeals have also applied

18  *Frow*'s principle without hesitation. *See Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274

19  (10th Cir. 2001) ("[W]here defendants are jointly liable and one defendant defaults, in order to

20  avoid inconsistent judgments, the proper procedure is to enter default, but not to enter judgment

21  in favor of the plaintiff against the defaulter unless the plaintiff prevails against the appearing

22  defendants."); *Home Ins. Co. of Illinois v. Adco Oil Co.*, 154 F.3d 739, 741 (7th Cir. 1998) ("In a

23  suit against multiple defendants a default judgment should not be entered against one until the

24  matter has been resolved as to all."); *Costner v. U.S.*, 56 Fed. Appx. 287, 2003 WL 173850 (8th

25  Cir. 2003) (unpublished) (recognizing *Frow*'s continuing validity and affirming district court

26  denial of motion for default judgment). This Court, too, has relied upon *Frow* in denying a

premature motion for default judgment where other defendants who faced alleged joint liability were actively litigating the case. *Villalobos v. Deutsche Bank Nat'l Trust Co.*, No. C09–1450–JCC, 2011 WL 2415543, at *1–2 (W.D. Wash. June 14, 2011).

Here, Plaintiff's motion fails to address *Frow* and its progeny.[2] However, *Frow* remains good law, *see Nielson*, 253 F.3d at 532, and it is clear that Plaintiff seeks the very type of default judgment that *Frow* prohibits. Plaintiff alleges in its RICO claim that ten defendants conspired to defraud Indonesian investors by operating an "association–in–fact" enterprise. (Dkt. No. 1, ¶ 6.4.) However, of the nine remaining "Ponzi Scheme Defendants" defendants, only three—Danny Wong, Joseph Yau, and Luis Garza—have defaulted. The remaining Defendants—Dwight Williams, Kenneth McCabe, Donald Sherer, Michelle Lawrence Sherer, Kelly Thacker, and David Thacker—continue to face Plaintiff's RICO claim and are currently litigating the case. Because Plaintiff seeks to hold the Ponzi Scheme Defendants jointly and severally liable for the damages caused by the Dressel scheme, to award default judgment against three of the nine remaining defendants would constitute an abuse of this Court's discretion, *Nielson*, 253 F.3d at 532, and create the potentially "absurd" scenario of which the *Frow* Court long ago warned—the remaining defendants could prevail on the merits, while the three defaulting defendants would have already faced the inconsistent determination that they are jointly liable for a meritless RICO claim. The Court declines to so exercise its discretion and accordingly denies Plaintiff's motion for default judgment.

## B.    Plaintiff's Motion for Leave to Amend

Plaintiff also moved for leave to amend its complaint in two respects under Federal Rule of Civil Procedure 15. Specifically, Plaintiff seeks to add breach of fiduciary duty and negligence

---

[2] The Court is uncertain whether Plaintiff's failure to cite and discuss *Frow* and *Nielson* was due merely to oversight or whether they hoped the Court would grant the motion for default judgment without realizing its error. Nonetheless, the Court wishes to make clear that while the failure to cite relevant, binding authority does not warrant sanctions in this instance, Plaintiff's counsel has a duty of candor to this Court that it is advised to take seriously.

claims against proposed defendants Randy Sellers and Professional Business Advisors. (Dkt. No. 350–2, ¶¶ 16.1–16.20, 18.1–18.6.) Second, Plaintiff proposes adding a declaratory judgment claim and claim for an accounting against certain proposed defendants, including Jared Sherer, Zarahemla Trusts One and Two, Intrepid Trust, Elite Portfolio LLC, PADRM Gold Mine, LLC, Rafael Garza, Global Consulting Services, S.A. de C.V., Asset Recovery Trust, and Robert Jinks. (*Id.* at ¶¶ 19.1–20.5.)  According to Plaintiff, it seeks to add these defendants and claims at this late stage of the case because its "discovery and investigation" have recently made it aware that such an amendment was necessary. (Dkt. No. 350 at 2.) No Defendant has opposed Plaintiff's motion, though Jared Sherer, a non–party and proposed defendant, filed an unsolicited opposition. (Dkt. No. 352.) Upon review, the Court concludes that Plaintiff may amend its complaint.

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." In the Ninth Circuit, this amendment policy must be applied with "extreme liberality." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

> In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Eminence Capital*, 316 F.3d at 1052 (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). However, not all of these factors merit equal weight: "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining *Forman* factors, there exists a

1    presumption under Rule 15(a) in favor of granting leave to amend."[3] *Id.*

2          Here, there appears to be no reason sufficient to deny Plaintiff's motion with regard to its

3    proposed amendments. No party has asserted that it would be prejudiced by the addition of the

4    new claims and defendants. Nor has there been any serious assertion that Plaintiff has acted in

5    bad faith, to seek undue delay, or with an otherwise dilatory motive, even though it is likely that

6    Plaintiff's choice to add defendants at this stage will, in fact, prolong the proceedings. Finally,

7    there has been no suggestion that Plaintiff's newly proposed claims are futile other than the

8    assertions of non–party Jared Sherer, which are addressed below. Rather, it appears that adding

9    the proposed claims and defendants will allow the Court to more efficiently adjudicate all of

10   Plaintiff's claims in one sitting, which is especially important given that the new claims are

11   dependent on the factual allegations already made in this case.

12         As noted above, Jared Sherer opposes Plaintiff's motion to amend. However, because Mr.

13   Sherer is not yet a party to this action and has not filed a motion to intervene, his standing to

14   contest Plaintiff's motion "is, at best, dubious." *Copantitla v. Fiskardo Estiatorio, Inc.*, No. C09–

15   1608, 2010 WL 1327921, at *4 (S.D.N.Y. April 5, 2010) (quoting *Vasquez v. Summit Women's*

16   *Center, Inc.*, No. C01–955, 2001 WL 34150397, at *1 n.1 (D. Conn. Nov. 16, 2001); *accord*

17   *State Farm Mut. Automobile Ins. Co. v. CPT Med. Servc's., P.C.*, 246 F.R.D. 143, 146 n.1

18   (E.D.N.Y. 2007) (non–parties proposed as new defendants lack standing to challenge motion to

19   amend). Nonetheless, the Court has considered Mr. Sherer's arguments given that he could have

20   filed a motion to intervene for the limited purpose of opposing Plaintiff's motion. *See Beckman*

21   ───────────────────

22       [3] Federal Rule of Civil Procedure 16(b), which provides that a previously entered scheduling order may
     only be modified "for good cause and with the judge's consent," is also implicated where a party seeks amendment

23   beyond the previously established pleading amendment deadline. Under Rule 16(b), Plaintiff "must show good
     cause for not having amended [its] complaint[] before the time specified in the scheduling order expired[,]" which in

24   this matter, was originally set for January 7, 2011. According to the Ninth Circuit, this standard "primarily considers
     the diligence of the party seeking the amendment." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir.

25   2000). Here, even under the Rule 16(b) standard, the Court concludes that good cause exists because according to
     Plaintiff, it learned of the additional information prompting amendment in the course of discovery. While it likely

26   could have requested amendment sooner—for example, it knew of the Alaska claims at least as early as September
     2012—the Court does not believe that this delay demonstrates a lack of diligence.

1  *Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 472 (9th Cir. 1992) (permitting intervention

2  of non–party for limited purpose of requesting modification of protective order); *LG Electronics*

3  *Inc. v. Q–Lity Computer*, 211 F.R.D. 360, 366 (N.D. Cal. 2002) (permitting non–party

4  intervention for limited purpose of opposing plaintiff's motion to amend certain disclosures).

5  The Court finds Mr. Sherer's arguments to be without merit.

6         Mr. Sherer first argues that he would be prejudiced by the amended complaint. However,

7  the only prejudice to which Mr. Sherer points involves the fact that he would be named as a

8  defendant and that the case has been pending for more than three years. Without more, being

9  sued for one claim does not alone establish substantial prejudice that warrants denial of

10  Plaintiff's motion to amend. As Plaintiff notes, Mr. Sherer has been aware of the Alaska *in rem*

11  action since its filing in September 2012, thus placing him on notice of the one potential claim in

12  this suit related to the Alaska assets. Finally, the duration of the lawsuit, without more, is

13  similarly insufficient to constitute the substantial prejudice warranting denial of Plaintiff's

14  motion, especially given that Mr. Sherer has not been a party to the lawsuit during those three

15  years. Rather, the Court's primary concern regarding prejudice involves current defendants, who

16  face the prospect of increased delay by adding *new* defendants such as Mr. Sherer.

17         Mr. Sherer's additional arguments can fairly be construed as a "futility" argument. It is

18  well–established that the Court may deny leave to amend if amendment would be futile. *Serra v.*

19  *Lapin*, 600 F.3d 1191, 1200 (9th Cir. 2000). Evaluating whether a proposed amendment is futile

20  requires the Court to determine whether amendment would withstand a motion to dismiss under

21  Federal Rule of Civil Procedure 12(b)(6). *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th

22  Cir. 1988). In making this evaluation, the Court is confined to review of the proposed amended

23  pleading. *Id.*  Here, Mr. Sherer asserts that he is legally immune from any claims due to his 2007

24  bankruptcy discharge and that the RICO statute of limitations has already run, thus barring a

25  claim against him.

26  //

ORDER
PAGE - 9

1    Both of Mr. Sherer's arguments fail to demonstrate futility, as they raise alleged factual

2  disputes rather than a deficiency in pleading. Indeed, with regard to Mr. Sherer's February 1,

3  2007 bankruptcy, he implies that any interest he held in the Alaska assets was discharged in

4  bankruptcy, though he has not specified that such interests were actually discharged. Plaintiff,

5  however, alleges that Mr. Sherer currently holds title to certain of the Alaskan assets, which it

6  states that he obtained after his bankruptcy, contrary to Mr. Sherer's claims. Similarly, Mr.

7  Sherer's statement that Plaintiff's investors knew of his interests in the assets prior to his filing

8  for bankruptcy, even if true, constitutes a factual dispute that is appropriately addressed once he

9  has become a party to the lawsuit. Finally, Mr. Sherer's arguments regarding RICO's statute of

10  limitations are similarly without merit. Plaintiff is not asserting a RICO claim against Mr. Sherer,

11  and thus, the Court declines to consider any such argument. If discovery demonstrates that

12  Plaintiff's fraudulent conveyance claim was filed beyond the applicable statute of limitations,

13  Mr. Sherer may move for dismissal and/or for summary judgment at the appropriate time.

14    The Court has considered the remainder of Mr. Sherer's assertions, most of which

15  constitute additional factual disputes raised in response to Plaintiff's proposed amended

16  complaint. Such unsupported contentions cannot be considered in determining whether

17  Plaintiff's newly proposed allegations are sufficiently alleged under the appropriate Rule

18  12(b)(6) standard. Upon review, the Court concludes that Mr. Sherer has not demonstrated

19  sufficient prejudice or futility to preclude granting Plaintiff permission to amend its complaint.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

III.    **CONCLUSION**

In light of the foregoing, the Court hereby DENIES Plaintiff's motion for default judgment (Dkt. No. 312) and GRANTS Plaintiff's motion to amend its complaint (Dkt. No. 350). Plaintiff is directed to file within seven (7) days of the date of this Order its amended complaint as a separate docket entry. Plaintiff's amended complaint, however, **may not include** any claims or defendants that have already been dismissed from this lawsuit, given that Plaintiff has not requested leave to so amend its complaint. The caption and substance of the amended complaint should be amended accordingly before submission to the Court.

DATED this 22nd day of March 2013.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 11